IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NADINE LEE YOUNG                    *

          Plaintiff,       *

          vs.                      * CIVIL ACTION NO. MJG-17-713

HOUSING AUTHORITY OF               *
BALTIMORE CITY, ET AL.
                                   *

          Defendants

*      *      *      *      *      *      *      *      *

## MEMORANDUM AND ORDER RE: SUMMARY JUDGMENT

The Court has before it Defendant Housing Authority of
Baltimore City's Renewed Motion to Dismiss Complaint As Amended
or In the Alternative For Summary Judgment [ECF No. 20],
Defendant, Wade Johnson's, Motion to Dismiss for Failure to
State A Claim and/or for Summary Judgment [ECF No. 23], and the
materials submitted relating thereto.  The Court finds that a
hearing is not necessary.


I.   BACKGROUND

     A.   Asserted Claims

     Plaintiff Nadine Lee Young ("Plaintiff" or "Young"), an
employee of Defendant Housing Authority of Baltimore City
("HABC") was, during a portion of her employment, supervised by
Defendant Wade Johnson ("Johnson").

Young alleges that she was sexually harassed by Johnson during her employment. She asserts claims against both Defendants for alleged violations of Title VII of the Civil Rights Act, the Maryland Fair Employment Practices Act, the Due Process Clause of the U.S. Constitution and the Maryland Constitution, and the Equal Protection Clause of the U.S. Constitution and Maryland Constitution. She alleges that HABC negligently hired, trained, retained, and supervised Johnson, and that HABC is liable under a theory of negligent entrustment. She also asserts an assault claim against Johnson.

B. Facts As Alleged by Young[1]

Young has been employed by HABC since 2003 as a maintenance worker. Amended Complaint ("AC") ¶ 12, ECF No. 11-4.

In 2012, Young went to the Duncanwood facility of HABC to receive some equipment for work and met Defendant Johnson. At the time, Johnson called her "Miss Dimples" in a "very suggestive" manner. AC ¶ 13; Aff. Young ¶ 4, ECF No. 11-2.

In or about October 2015, Young worked at the Gilmor Homes facility of HABC. Johnson was "occasionally" at Gilmor Homes, and Young alleges that his sexual harassment "became worse" in

_____

[1] Defendants do not agree with many of Young's factual allegations.

2

the following months.  AC ¶ 15.  He became more "aggressive,"
and every time he saw her he "took the opportunity to make
sexually suggestive or lewd comments or propositions to [her]."
Aff. Young ¶ 6, ECF No. 11-2.

In early 2016, Johnson officially became Young's supervisor
at Gilmor Homes, and his sexual harassment became "a daily
problem."  AC ¶ 17.  Starting at the end of 2015, Johnson "would
repeatedly come to Ms. Young's desk and whisper lewd comments
into her ear and ask to take her on dates."  Id. ¶ 17.  See also
Aff. Young ¶ 9, ECF No. 11-2.  He would "'talk with his hands'"
in such a manner that he would place his hands on Ms. Young
while making such comments.  AC ¶ 17, Aff. Young ¶ 12, ECF No.
11-2.  Frequently, he would "invade Ms. Young's personal space"
by coming into her small file room while she was working.  AC ¶
18.  See also Aff. Young ¶ 11, ECF No. 11-2.  During one of
these times, Johnson "reach[ed] over her body with his arms on
either side of her" when showing her something on the computer.
AC ¶ 19, Aff. Young ¶ 13, ECF No. 11-2.  Young feared that
Johnson would "one day inappropriately touch her in a sexual
manner."  AC ¶ 20.  See also Aff. Young ¶ 19, ECF No. 11-2.

On a date allegedly near his birthday, Johnson offered to
take Young and another employee on a cruise, stating that he

"could make wonders happen on that cruise." Id. ¶ 21. See also
Aff. Young ¶ 15, ECF No. 11-2.

Sometimes—no specific time was alleged—Johnson would ask
Young if she was "ready," which she understood to mean "ready
for a sexual encounter with him." AC ¶ 22. See also Aff. Young
¶ 7, ECF No. 11-2. This occurred on one occasion in front of
another employee. Aff. Young ¶ 17, ECF No. 11-2.

On or about February 2016, Johnson told Young that "I would
love to taste that." AC ¶ 23. Later that month, Young took
time off work for surgery, and upon her return on April 28,
2016, Johnson told her that she would be working at the Perkins
Project (another HABC facility) instead of Gilmor Homes. Id. ¶
24. He gave her his phone number and asked her to call him,
which Young "understood to mean that she should contact him for
a date or sexual encounter." Id.[2]

Young alleges that Johnson frequently engaged in this type
of activity and may have been the subject of complaints from
other HABC employees in the past. AC ¶¶ 14, 16, 26, 29, 35.
See also Aff. Dawson, ECF No. 11-3, Aff. Young ¶ 16, ECF No. 11-
2. Young alleges that Johnson had a "previous history of

---

[2] The April 28, 2016 date does not appear in the Amended
Complaint. Rather, Young filed an additional affidavit stating
that this last interaction she had with Defendant Johnson was on
April 28, 2016. Supp. Aff. Young ¶ 4, ECF No. 21-1.

workplace sexual harassment," was "fired from a previous job in the public schools for sexual harassment," and "had pending sexual harassment cases at the Health Department." AC ¶ 33.

Young alleges that, at some unspecified time "early on" in her interactions with Johnson, she contacted her Union representatives regarding the sexual harassment. Id. ¶ 25, Aff. Young ¶ 21, ECF No. 11-2. She also spoke to her supervisor, Vernelle Gibson, in May 2016 regarding Johnson's behavior. Following this discussion, a hearing was held and Johnson was terminated from his HABC employment. AC ¶ 28. Following Johnson's termination, Young returned to work at Gilmor Homes. Id. ¶ 39.

Young filed her EEOC Charge of Discrimination on December 8, 2016. Def.'s Mot. Ex. 2A at 70, ECF No. 20-7. The EEOC issued a Dismissal and Notice of Rights letter on December 16, 2016. AC ¶ 30. Young filed the Complaint in the instant case on March 15, 2017. ECF No. 1. On May 18, 2017, she filed the Amended Complaint ("AC") [ECF No. 11], asserting ten causes of action:

| Count | Title |
|-------|-------|
| I | Civil Rights Act Hostile Environment Sexual Harassment |
| II | Civil Rights Act Quid Pro Quo Sexual Harassment |

| III  | Civil Rights Act Due Process Claim |
|------|-------------------------------------|
| IV   | Civil Rights Act Equal Protection Claim |
| V    | Sexual Harassment Under Maryland Fair Employment Practices Act Code § 20-606:  Hostile Work Environment and Quid Pro Quo |
| VI   | Maryland Constitution Article 24 Due Process Claim |
| VII  | Maryland Constitution Article 24 Equal Protection Claim |
| VIII | Negligent Hiring, Training, Retention & Supervision |
| IX   | Negligent Entrustment |
| X    | Assault |

II.  <u>LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT</u>

Both Defendants have filed motions to dismiss, or in the alternative, motions for summary judgment.  Both sides have also submitted materials in addition to the Amended Complaint regarding these motions.  The Court has not excluded these materials from consideration.

When "matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  <u>Laughlin v. Metro. Washington Airports Auth.</u>, 149 F.3d 253, 260-61 (4th Cir. 1998); Fed. R. Civ. P. 12(d).

Because the Court has relied on supplemental affidavits and documents filed outside of the pleadings, it will treat the pending motions as motions for summary judgment.

A motion for summary judgment shall be granted if the pleadings and supporting documents "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The well-established principles pertinent to summary judgment motions can be distilled to a simple statement: [t]he Court may look at the evidence presented in regard to a motion for summary judgment through the non-movant's rose-colored glasses, but must view it realistically. After so doing, the essential question is whether a reasonable fact finder could return a verdict for the non-movant or whether the movant would, at trial, be entitled to judgment as a matter of law. See, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Shealy v. Winston, 929 F.2d 1009, 1012 (4th Cir. 1991). Thus, in order to defeat a motion for summary judgment, "the party opposing the motion must present evidence of specific facts from which the finder of fact could reasonably find for him or her."

<u>Mackey v. Shalala</u>, 43 F. Supp. 2d 559, 564 (D. Md. 1999)

(emphasis added).

When evaluating a motion for summary judgment, the Court

must bear in mind that the "[s]ummary judgment procedure is

properly regarded not as a disfavored procedural shortcut, but

rather as an integral part of the Federal Rules as a whole,

which are designed 'to secure the just, speedy and inexpensive

determination of every action.'" <u>Celotex</u>, 477 U.S. at 327

(quoting Fed. R. Civ. P. 1).


III.  <u>DISCUSSION</u>

    A. <u>Sexual Harassment:  Title VII and the Maryland Fair</u>
       <u>Employment Practices Act</u>

In Counts I, II and V, Plaintiff asserts claims for sexual

harassment under Title VII and the Maryland Fair Employment

Practices Act ("FEPA").  She contends that Defendant Johnson

subjected her to, and Defendant HABC allowed, <u>quid</u> <u>pro</u> <u>quo</u>

sexual harassment and a hostile work environment.[3]

In response, Defendants argue that Young (1) failed to

timely exhaust her administrative remedies, (2) failed to plead

a claim for sexual harassment upon which relief can be granted,

_____

[3] Plaintiff may assert Title VII claims against Defendant HABC
but not Defendant Johnson.  <u>Lewis v. Baltimore City Bd. of Sch.</u>
<u>Commissioners</u>, 187 F. Supp. 3d 588, 594 (D. Md. 2016)
("Individuals cannot be held liable under Title VII.").

and (3) that HABC is protected from liability by an affirmative defense that it exercised reasonable care to prevent and promptly correct any sexually harassing behavior.

### i. Exhaustion of Administrative Remedies

Defendants bring several procedural challenges to Plaintiff's claims, arguing that Plaintiff did not file her EEOC charge on time, that Plaintiff's EEOC Charge does not cover the actions now alleged in the Amended Complaint, that Plaintiff's claims are barred by the statute of limitations under FEPA, and that Plaintiff did not give proper Local Government Tort Claims Act ("LGTCA") notice for some of the claims.

### 1. Timing of EEOC Charge

To exhaust her administrative remedies before filing a Title VII action, Young must first properly "bring[] a charge with the EEOC." Smith v. First Union Nat. Bank, 202 F.3d 234, 247 (4th Cir. 2000). Defendant argues that Young's EEOC Charge was not timely filed.

Plaintiff filed her EEOC Charge against Defendant Johnson on December 8, 2016. Def.'s Mot. Ex. 2A at 70, ECF No. 20-7. Defendants contend that any alleged sexual harassment incident occurred more than 300 days prior thereto, i.e., before February

12, 2016.  If so, the Charge would be outside of the 300 day

time limit for EEOC filing and would be time barred.[4]

In the Amended Complaint, Plaintiff alleges that in

February 2016, Wade Johnson stated to her "I would love to taste

that."  AC ¶ 23.  This is consistent with her EEOC Charge, which

alleges that she was "subjected to sexual harassment by [her]

Supervisor Wade Johnson" "in or about February 2016."  Def.'s

Mot. Ex. 2A at 70, ECF No. 20-7.

Because Young has not specified the exact date in February

2016 of the alleged incident, the record does not show whether

the EEOC Charge was, or was not, filed within 300 days of the

alleged statement.  Hence, on the current record, the Court can

only conclude that based on Young's allegations it is possible

that the December 8, 2016 EEOC filing was timely, but recognizes

the existence of a factual issue regarding the date.[5]

---

[4] Generally, the time limit for filing EEOC Charges is 180 days.
42 U.S.C. § 2000e-5(e)(1).  However, this period is extended to
300 days in a deferral state.  See Valderrama v. Honeywell Tech.
Sols., Inc., 473 F. Supp. 2d 658, 662 (D. Md. 2007), aff'd, 267
F. App'x 256 (4th Cir. 2008).  Maryland is one of these deferral
states; therefore, the 300 day limit applies to Maryland
plaintiffs.  See also Prelich v. Med. Res., Inc., 813 F. Supp.
2d 654, 661-62 (D. Md. 2011).

[5] Plaintiff has also alleged an April 2016 incident in which
Defendant Johnson flirtatiously gave Plaintiff his phone number
and asked her to use it.  Supp. Aff. Young ¶¶ 4-6, ECF No. 21-1.
However, this incident was not specified in the EEOC Charge and
may not be used to prove that the Charge was timely filed.

Hence, the Court will assume for present purposes that the EEOC Charge was timely filed.  If the alleged February 2016 incident is within 300 days of Plaintiff's EEOC Charge, Young's claim that the incident was part of a continuing violation including other alleged incidents presents a plausible claim that evidence of the alleged related sexual harassment incidents could be considered in connection with her hostile work environment claim.  See Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134, 140 (4th Cir. 2007) (Under the continuing violation doctrine, "a hostile work environment claim 'may appropriately extend ... to acts that occurred before the relevant limitations period [if] the hostile work environment continued within the limitations period as well.'").

On the current state of the record, Defendants are not entitled to summary judgment dismissing Young's sexual harassment claims on this basis.


2. Content of EEOC Charge

Defendants argue that the Amended Complaint asserts claims that were not included in the EEOC Charge.  Specifically, the EEOC Charge states that Johnson said he wanted to "[t]aste this" and would "rock [her] world" if Young went on a cruise with him, Def.'s Mot. Ex. 2A at 70, ECF No. 20-7, while her Amended

Complaint contains additional allegations of comments and actions that Johnson took to sexually harass her.

The Court finds Plaintiff's EEOC Charge is broad enough to encompass the more specific allegations that were made in her Amended Complaint. In her EEOC Charge, she states that "I was subjected to sexual harassment by my Supervisor Wade Johnson." Def.'s Mot. Ex. 2A at 70, ECF No. 20-7. She listed two specific incidents as examples, but in context her sexual harassment charge is not reasonably limited to the two specifically stated examples. See Sydnor v. Fairfax Cty., Va., 681 F.3d 591, 594 (4th Cir. 2012) (explaining that the exhaustion requirement should not become a "tripwire for hapless plaintiffs" and understanding that the EEOC charges are initiated by laypersons, not lawyers).

### 3. Statute of Limitations under FEPA

Defendants argue that any claim under Maryland's FEPA statute is time-barred because it must have been filed within six months of the date on which the alleged discriminatory act occurred.

The FEPA statute provides several different routes for dispute resolution. A plaintiff seeking to file a complaint with the Maryland Commission on Human Relations ("MCHR") has six

months from the alleged discriminatory act to do so. <u>See</u> Md.

Code Ann., State Gov't § 20-1004; Md. Code Regs. 14.03.01.03.

However, a plaintiff electing to bring a civil action has

possible relief from the six month rule under Md. Code Ann.,

State Gov't § 20-1013, which states:

> [A] complainant may bring a civil action
> against the respondent alleging an unlawful
> employment practice, if:
>
> (1) the complainant initially filed a timely
> administrative charge or a complaint under
> federal, State, or local law alleging an
> unlawful employment practice by the
> respondent;
>
> (2) at least 180 days have elapsed since the
> filing of the administrative charge or
> complaint; and
>
> (3) the civil action is filed within 2 years
> after the alleged unlawful employment
> practice occurred.

Md. Code Ann., State Gov't § 20-1013.

This provision effectively provides a two-year statute of

limitations for FEPA civil actions. <u>See</u> <u>Templeton v. First</u>

<u>Tennessee Bank, N.A.</u>, No. CIV. WDQ-09-3280, 2013 WL 3873180, at

*7 (D. Md. July 24, 2013) (finding a Title 20 retaliation claim

not time-barred because it was filed within two years after the

alleged discrimination occurred); <u>Howerton v. Bd. of Educ. of</u>

<u>Prince George's Cty.</u>, No. CIV.A. TDC-14-0242, 2015 WL 4994536,

at *7 (D. Md. Aug. 19, 2015) ("Maryland law applies a two-year

statute of limitations for employment discrimination actions,"
citing Md. Code Ann., State Gov't § 20-1013(a)(3)); <u>Davenport v.
Maryland</u>, 38 F. Supp. 3d 679, 691 (D. Md. 2014) ("Section 20 –
1013 of the State Government Article of the Maryland Code
requires that a civil action alleging 'an unlawful employment
practice' be filed 'within 2 years after the alleged unlawful
employment practice occurred'").

In the context of the present discussion, the Court assumes
that Young timely filed her EEOC Charge so that she has "filed a
timely administrative charge" "under federal . . . law alleging
an unlawful employment practice by the respondent."  Md. Code
Ann., State Gov't § 20-1013.  She commenced her action within
two years of the alleged sexual harassment incidents.

Her EEOC Charge was filed on December 8, 2016, and she was
required to wait until June 6, 2017 to file her civil action.
She filed the Complaint on March 15, 2017, and an amended
Complaint on May 17, 2017, both of which were filed too early,
<u>i.e.</u>, within 180 days of the alleged torts.  However, the
requisite 180 days have passed as of the time of this Memorandum
& Order.  The Court finds that, in the context of the instant

case, no purpose would be served by dismissing the Complaint and Amended Complaint and requiring refiling.[6]

### 4. LGTCA Notice

Under Maryland's LGTCA, "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 1 year after the injury."  Md. Code Ann., Cts. & Jud. Proc. § 5-304.

Defendants contend that Plaintiff's state law claims are barred because they did not provide the required pre-filing notice to HABC.[7]  Plaintiffs argue that the Complaint itself is the notice and seem to imply that the date of the Amended Complaint is the actual start of the action.  Pl.'s Opp. at 28, ECF No. 21.

---

[6] Moreover, the 180 day waiting period created by the Maryland statute is properly viewed in light of the analogous 180 day waiting period for federal actions.  Courts in this jurisdiction have held that the 180 day waiting period provides "prompt access to the courts in discrimination disputes, a purpose that is so important that the administrative process will be given only a finite time to deal along with a given dispute."  Sillah v. Burwell, 244 F. Supp. 3d 499, 515–16 (D. Md. 2017).  In other words, the 180 day waiting period was meant to give the relevant agency an opportunity to act.  Here, the EEOC has already issued a Notice of Rights letter, so that purpose is already served.

[7] HABC constitutes a "local government" under the LGTCA.  Md. Code Ann., Cts. & Jud. Proc. § 5-301(d)(15).

"It is a longstanding principle of Maryland jurisprudence that the LGTCA notice provision is a condition precedent to maintaining an action directly against a local government or its employees." Hansen v. City of Laurel, 420 Md. 670, 682 (2011). Moreover, this notice requirement must be pled in the Complaint or Amended Complaint. Id. "If a plaintiff omits this step, he or she is subject to a motion to dismiss, for instance, based on a failure to state a claim upon which relief can be granted." Id.

Plaintiff did not plead compliance with the notice requirement in her Complaint or Amended Complaint. Her attempted characterization of the Complaint as the notice is not successful. The statute explicitly requires notice prior to the institution of a civil action.

However, the statute also provides that "unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given." Md. Code Ann., Cts. & Jud. Proc. § 5-304(d) (emphasis added).

The Court cannot now excuse the required pre-filing notice and must now dismiss the claims requiring LGTCA notice as to HABC, recognizing that they may be reinstated should Young

prevail on a motion pursuant to § 5-304(d).  See Rounds v. Maryland-Nat. Capital Park & Planning Comm'n, 441 Md. 621, 645 (2015), reconsideration denied (Mar. 27, 2015) ("Where a plaintiff fails to comply with the notice requirement, it is the plaintiff's burden to demonstrate 'good cause.'").

Accordingly, the Court shall dismiss–as to HABC–Young's state law claims requiring LGTCA notice.[8]  This is without prejudice to Young's ability to seek reinstatement of some of those claims pursuant to a § 5-304(d) motion.  The Court will also address the substantive defenses to the LGTCA claims asserted by Defendants.

### ii. Quid Pro Quo Liability

Plaintiff has alleged quid pro quo liability under Counts II (Title VII) and V (Maryland FEPA).[9]  Showing quid pro quo liability requires the plaintiff to prove five elements, that:

---

[8] This includes Plaintiff's Counts V through IX as asserted against HABC.  The "LGTCA notice requirement applies to both state constitutional and non-constitutional tort claims for unliquidated damages."  Rounds, 441 Md. at 636.

[9] Maryland's FEPA "is the state law analogue of Title VII," and has been interpreted according to the same principles.  McCray v. Maryland Dep't of Transp., No. CIV.A. ELH-11-3732, 2014 WL 4660793, at *14 (D. Md. Sept. 16, 2014); Nam v. 2012 Inc., No. CV DKC 15-1931, 2016 WL 107198, at *4.

1.   The employee belongs to a protected
    group.

    2.   The employee was subject to unwelcome
    sexual harassment.

    3.   The harassment complained of was based
    upon sex.

    4.   The employee's reaction to the
    harassment affected <u>tangible aspects</u> of the
    employee's compensation, terms, conditions,
    or privileges of employment . . . .

    5.   The employer . . . knew or should have
    known of the harassment and took no
    effective remedial action.

<u>Okoli v. City of Baltimore</u>, 648 F.3d 216, 222 (4th Cir. 2011)

(internal citations omitted) (emphasis in original).  On Element

4, "[t]he acceptance or rejection of the harassment must be an

express or implied condition to the receipt of a job benefit or

cause of a tangible job detriment to create liability," and "the

employee must prove that she was deprived of a job benefit which

she was otherwise qualified to receive because of the employer's

use of a prohibited criterion in making the employment

decision."  <u>Id.</u>

    The Amended Complaint does not include allegations

sufficient to present a plausible claim that the fourth element

of the tort can be established.  There are no allegations

presenting a plausible claim that any reaction Young had towards

Johnson's advances affected "tangible aspects" of her

employment, or that any job benefit or job detriment depended on her acceptance or rejection of the harassment.

Accordingly, Plaintiff's sexual harassment claims under quid pro quo liability, if reinstated, would be dismissed.


### iii. Hostile Work Environment Liability

To establish a hostile work environment sexual harassment claim, a plaintiff must prove that:

> (1) the subject conduct was unwelcome;
>
> (2) it was based on the sex of the plaintiff;
>
> (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and
>
> (4) it was imputable on some factual basis to the employer.

Spicer v. Com. of Va., Dep't of Corr., 66 F.3d 705, 710 (4th Cir. 1995).

In assessing whether a work environment is objectively hostile, it is necessary to consider "'all the circumstances,' including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Anderson v.

19

<u>G.D.C., Inc.</u>, 281 F.3d 452, 459 (4th Cir. 2002).  Moreover,
"[o]n the fourth element for establishing employer liability,
[the Fourth Circuit has] repeatedly held that an employer cannot
be held liable for isolated remarks of its employees unless the
employer 'knew or should have known of the harassment, and
took <u>no</u> effectual action to correct the situation.'"  <u>Spicer</u>, 66
F.3d at 710.

Young's hostile work environment claim turns on the last
two elements:  whether the harassment was "sufficiently severe
or pervasive" as to alter Young's conditions of employment, and
whether the harassment was imputable to HABC.

Young makes some generalized allegations of sexual
harassment occurring on a daily basis or being a "daily
problem."  AC ¶ 17.  She also makes allegations of specific
incidents of sexual harassment, such as comments made by Johnson
about how he "could make wonders happen" on a hypothetical
cruise he wanted to take her on, about whether Young was "ready"
for him, and a statement about how he "would love to taste
that."  AC ¶¶ 21-23.  These statements are of a sexual nature
and the allegations present a plausible claim that they rise to
the level of "sufficiently severe or pervasive" to warrant
liability.  Beyond an allegation that Johnson would "talk with
his hands" and "place his hands on Ms. Young" when making such

comments, she has not alleged any inappropriate physical
contact.  AC ¶ 17, Aff. Young ¶ 12, ECF No. 11-2.  She does,
however, allege that she had a fear that inappropriate physical
contact could happen due to these frequent comments and
advances.  AC ¶ 20 (alleging Young feared that Mr. Johnson would
"one day inappropriately touch her in a sexual manner.").  When
considering all the circumstances, it is possible that a jury
could find that the alleged incidents, in conjunction with
Young's broader allegations of "daily" harassment, could be
found to meet the "sufficiently severe or pervasive" standard.

To be held liable, HABC had to "know" or "should have
known" of the harassment and take "no effectual action to
correct the situation."  Spicer, 66 F.3d at 710.  Here, Young
suggests that because Johnson's comments and actions were well
known around the office, HABC as an entity must have known of
his actions as well.  AC ¶¶ 33-34.  She also states that she
reported this behavior to her union representative.  AC ¶¶ 25-
28.

On the other hand, an affidavit filed on behalf of HABC by
Anna L. Armstrong states that "the first complaint regarding
Wade Johnson HABC received was by Latanya Dawson on Thursday,
June 9, 2016."  Aff. Armstrong ¶ 5, ECF No. 20-6.  When Dawson
made that complaint, Johnson was relocated and terminated

shortly thereafter.  The parties' factual accounts are in
conflict.  The question of what, if anything, HABC knew about
the harassment is a question properly left for the jury.

Accordingly, Plaintiff's sexual harassment claims under
hostile work environment liability would not be resolved on a
summary judgment motion.


iv. Affirmative Defense

 "[A] defending employer may raise an affirmative defense
to liability or damages" on a sexual harassment and hostile work
environment claim.  Faragher v. City of Boca Raton, 524 U.S.
775, 777–78 (1998).  The defense requires the employer to prove:

> (a) that the employer exercised reasonable
> care to prevent and correct promptly any
> sexually harassing behavior, and
>
> (b) that the plaintiff employee unreasonably
> failed to take advantage of any preventive
> or corrective opportunities provided by the
> employer or to avoid harm otherwise.

Id.  As to the first element, HABC argues that it had
promulgated three separate policies on sexual harassment (i.e.,
a Code of Conduct, a Sexual Harassment Policy, and an Employment
Related Investigations Policy).  Aff. Jan Goslee at ¶ 4, ECF No.
20-3.  The Code of Conduct was provided to both Young and
Johnson.  Def.'s Mot. Exs. 2A and 2D, ECF Nos. 20-7 and 20-10.

Moreover, HABC argues, its response upon learning of Johnson's harassing behavior was swift. An affidavit filed by Anna L. Armstrong states that "the first complaint regarding Wade Johnson HABC received was by Latanya Dawson on Thursday, June 9, 2016." Aff. Armstrong ¶ 6, ECF No. 20-6. Five days later, HABC's Human Resources initiated its investigations into Johnson's actions, and within two weeks Johnson was transferred to a different facility and subsequently terminated. Id. at ¶¶ 7-8. Plaintiff argues that the mere existence of sexual harassment policies does not meet the employer's burden under this first element.

As to the second element, Defendant argues that Young never used the provided anonymous hotline for reporting sexual harassment and "never brought her concerns to the attention of the Human Resources Director, Internal Audits and Investigations Unit, General Counsel, Chief Financial officer, Controller, HABC Manager, or the employee's Supervisor or Division Director." Def.'s Mot. at 19, ECF No. 20-2. Young argues that her actions in not reporting were reasonable because she "was afraid of retaliation." Pl.'s Opp. at 17, ECF No. 21. She also alleges in her Complaint that she spoke to her union representative and her supervisor about the sexual harassment. AC ¶¶ 25-28, ECF No. 11-4.

The Court finds that HABC has adequately alleged its affirmative defense at this stage of the litigation. It is true that a single policy may not be determinative of an employer's reasonable action:

> We recognize that an employer can meet its burden as to the first element without such a policy, and that mere promulgation of such a policy may well fail to satisfy the employer's burden. The employer must act reasonably, and thus any policy adopted by the employer must be both reasonably designed and reasonably effectual.

Brown v. Perry, 184 F.3d 388, 396 (4th Cir. 1999) (internal citations omitted). Here, HABC had promulgated three separate policies addressing sexual harassment, and Young and Johnson were each aware of at least one of them. Yet it is debatable whether the policies themselves were reasonably designed or reasonably effectual. HABC has also submitted an affidavit that the first time it was on notice of Johnson's behavior was on June 9, 2016, and it argues it took reasonably rapid actions to remove Johnson to a different facility. Aff. Armstrong ¶ 6, ECF No. 20-6. There is a dispute as to what HABC knew of Johnson's actions before June 9, 2016.

A dispute of material fact also exists as to the second element of HABC's affirmative defense. Plaintiff alleges in her Complaint that she spoke to her union representative and her

supervisor about the sexual harassment but at the same time states that she was afraid of reporting the actions. AC ¶¶ 25-28, ECF No. 11-4; Pl.'s Opp. at 17, ECF No. 21. However, Young was well aware of HABC's policies and had "filed at least four prior charges with the Baltimore Community Relations Commission" during her employment with HABC. Aff. Armstrong ¶ 4, ECF No. 20-6. Yet, she did not file her EEOC Charge until months later and did not use the anonymous Inspector General hotline that was provided for this purpose. Def.'s Mot. Ex. 1A at 15, ECF No. 20-4.

There are questions of fact requiring resolution to determine whether HABC's policies were reasonably effective and whether Young reasonably took steps to avail herself of any employer protections. HABC's affirmative defense is pending.


B. Due Process

Young alleges Due Process violations under the U.S. Constitution and the Maryland Constitution. Specifically, the Amended Complaint alleges a substantive due process violation based on Plaintiff's "right to be secure in her person in the workplace,"[10] AC ¶¶ 69-70, which Plaintiff understands to be a

---

[10] Although the Plaintiff makes the conclusory statement that "[t]here are no adequate procedural safeguards in place to

right to "bodily integrity," Pl.'s Opp. at 23, ECF No. 21.

However, the cases supporting a due process right to "bodily integrity" cited by Plaintiff involved actual sexual assault or physical harm.  See, e.g., Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443 (5th Cir. 1994) (finding a violation of substantive due process when schoolchild was sexually molested by her teacher); Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 727 (3d Cir. 1989) (noting a student's right to be free from sexual assaults by his or her teachers); Williams v. Wilzack, 319 Md. 485, 510 (1990) (finding a violation of procedural due process protections when a mentally competent adult involuntarily admitted to a psychiatric institution was forcibly administered antipsychotic medication).  See also Washington v. Glucksberg, 521 U.S. 702, 778 (1997) (discussing the liberty interest in bodily integrity in the context of decisions regarding termination of artificial life support).

Here, the Plaintiff at most alleges that Johnson would "'talk with his hands'" in such a manner that he would place his hands on Ms. Young while making harassing comments.  AC ¶ 17, Aff. Young ¶ 12, ECF No. 11-2.  Plaintiff alleges that one time, Johnson "reach[ed] over her body with his arms on either side of

---

prevent [the alleged] abuse," the Amended Complaint does not allege a lack of procedural due process.  AC ¶ 70.

her" when showing her something on the computer.  AC ¶ 19, Aff.
Young ¶ 13, ECF No. 11-2.  These facts simply do not allege a
due process violation of bodily integrity.  Accordingly,
Defendants are entitled to summary judgment on Plaintiff's
constitutional due process claims.


          C. Equal Protection

      Plaintiff alleges in Counts IV and VII that Defendants
violated her right to equal protection under both the U.S.
Constitution and the Maryland Constitution.  "Although
the Maryland Constitution contains no equal protection clause,
'the concept of equal protection is embodied in the due process
requirement of Article 24' of the Maryland Declaration of
Rights."  Blue v. Arrington, 221 Md. App. 308, 315 (2015).

      The Fourth Circuit has explained that "intentional sexual
harassment of employees by persons acting under color of state
law violates the Fourteenth Amendment [equal protection clause]
and is actionable under § 1983."  Beardsley v. Webb, 30 F.3d
524, 529 (4th Cir. 1994).  Courts may apply Title VII standards
to this type of equal protection claim.  Id.  See also Riley v.
Buckner, 1 F. App'x 130, 133 (4th Cir. 2001) ("Our precedent
applies the standards developed for hostile work environment

claims under Title VII to claims for sexual harassment under section 1983.").

Plaintiff alleges a violation of her right to equal protection. She alleges she was "singled out for harassment" by the defendants on the basis of her sex and that there is no rational, legitimate, or compelling state interest in the harassment. AC ¶¶ 72-75.

The Court will treat this claim as asserting a Section 1983 violation of the equal protection clause and has determined that there is a genuine dispute of material fact as to Defendant HABC's potential hostile work environment liability. Accordingly, Plaintiff's equal protection claims against HABC and Johnson remain pending.[11]

### D. Assault

In Maryland, assault is defined as an "attempt to cause a harmful or offensive contact with another or to cause an apprehension of such contact." Miles v. DaVita Rx, LLC, 962 F. Supp. 2d 825, 834 (D. Md. 2013).

---

[11] Although Defendant Johnson may not be liable in his personal capacity under Title VII, he may be personally liable under a Section 1983 claim alleging a violation of equal protection. See Beardsley v. Webb, 30 F.3d at 526-27 (noting that Title VII is not the sole remedy for sexual harassment and upholding district court's decision not to dismiss similar claims against supervisor).

"An action for assault, libel, or slander shall be filed within one year from the date it accrues."  Md. Code Ann., Cts. & Jud. Proc. § 5-105.  The Complaint was filed on March 15, 2017, and contained no assault claim.  See ECF No. 1.  Rather, the assault claim was added in the Amended Complaint on May 18, 2017.  ECF No. 11.  Even assuming that the claim relates back to the original Complaint, Young's assault claim is barred if it occurred before March 16, 2016.

In the Amended Complaint, Plaintiff alleges that the combination of the "constant sexually inappropriate commentary" and the "occasional unwanted touching and invasion of Plaintiff's personal space" placed Young in apprehension that Johnson would "at any time" touch her in a sexually inappropriate manner.  AC ¶ 100.

A complaint is required to allege more than generalized statements about "constant" or "occasional" actions that give rise to a claim for assault.  It must allege sufficient facts "to cross 'the line between possibility and plausibility of entitlement to relief.'"  Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Twombly, 550 U.S. at 557).

The Amended Complaint only states that Young took medical leave in February 2016 and upon her return was transferred to a different facility, away from Johnson.  Young's supplemental

29

affidavit states that the last interaction she had with Johnson was on April 28, 2016, regarding her facility transfer. On this date, Johnson "took [her] into his office and shut the door," "informed [her] that [she] was being transferred to a different site," and "flirtatiously gave [her] his personal cell phone number and asked [her] to use it." Supp. Aff. Young ¶¶ 4-6, ECF No. 21-1.

The allegations regarding the April 2016 interaction do not assert a plausible claim for assault, which is defined under Maryland law as an "attempt to cause a harmful or offensive contact with another or to cause an apprehension of such contact." Miles, 962 F. Supp. 2d at 834. There is no allegation that there was any attempt by Johnson to cause a harmful or offensive contact with Young on that date. Giving her a phone number, even flirtatiously, is not enough to state a claim for relief on assault. Young does not, for example, allege that Johnson moved towards her or tried to touch her when giving her his phone number.

Beyond the April 2016 interaction, there are no alleged interactions that could be said to plausibly assert an assault claim that would fall within the limitations period.

Accordingly, Defendant Johnson shall be granted summary judgment on Plaintiff's assault claim.

E. <u>Negligent Hiring, Training, Retention, and Supervision</u>

"[A]n employer owes a duty <u>to its employees</u> to use 'reasonable care and caution in the selection of competent fellow servants, and in the retention in his service of none but those who are.'" <u>Jones v. State</u>, 425 Md. 1, 18 (2012) (emphasis supplied). If that duty is breached, "the employer is liable <u>to the injured employee</u> 'not for the mere negligent act or omission of the incompetent or careless servant, but for his own negligence in not discharging his own duty towards the injured servant.'" <u>Id.</u> Like any negligence action, the tort of negligent selection, training, or retention requires the plaintiff to prove that "(1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered actual injury; and (4) the injury proximately resulted from the defendant's breach." <u>Id.</u>

"The nature and extent of the employer's duty of reasonable inquiry varies based upon the facts of each case." <u>Fid. First Home Mortg. Co. v. Williams</u>, 208 Md. App. 180, 198 (2012). When evaluating whether there was a breach of this duty, notice to the employer is a relevant consideration. <u>Id.</u> at 200 (affirming the award of compensatory damages when employer was "on notice" the employee was willing to forge documents and had forged

31

documents, and retaining him nonetheless).

When evaluating whether an act or omission was the proximate cause for an injury, the Court must examine whether there was (1) causation in fact and (2) a legally cognizable cause. Pittway Corp. v. Collins, 409 Md. 218, 243 (2009). The second part of this analysis "requires us to consider whether the actual harm to a litigant falls within a general field of danger that the actor should have anticipated or expected." Id. at 245.

Regarding negligent hiring, Defendant argues that when Johnson applied to work for HABC in 2010, "he indicated he had never been fired or asked to resign by his prior employers," and that Plaintiff has not alleged that HABC should have known otherwise. Def.'s Mot at 25, ECF No. 20. Moreover, Defendant argues that the 2010 hiring is too remote to give rise to an injury occurring in 2015 and 2016. Finally, the Defendant argues that any negligent hiring claim is barred by the 3-year statute of limitations.

The Court does not find that there was a duty to conduct an investigation of Johnson's prior employment history when his job application states that he was "laid off" and not fired from a previous job. Moreover, even if there were such a duty, any action that HABC did not take in 2010 is not the factual or

proximate cause of the alleged injuries in 2015 and 2016.  It is
not foreseeable from the facts in the record that a failure to
investigate Johnson's prior employment history from 2009–for
which HABC was not on notice–would cause injury to Plaintiff
nearly 7 years later.

Regarding negligent supervision, training and retention,
Defendant argues that there is no underlying tort claim at
common law that could give rise to a negligence claim in this
context.  See, e.g., Bryant v. Better Bus. Bureau of Greater
Maryland, Inc., 923 F. Supp. 720, 751 (D. Md. 1996) (refusing to
impose liability based on a negligent selection, supervision,
and retention theory under Title VII and ADA claims because
these are not Maryland common law causes of action); Braxton v.
Domino's Pizza LLC, No. CIV.A. RDB 06-1191, 2006 WL 3780894, at
*6 (D. Md. Dec. 21, 2006) (denying a negligent supervision claim
that was predicated upon a race discrimination claim under 42
U.S.C. § 1981); Hart v. Harbor Court Assocs., 46 F. Supp. 2d
441, 444 (D. Md. 1999) (noting that this Court has "repeatedly
held" that "'Title VII may not form the predicate for claims of
negligent retention and supervision."").  Because the assault
claim is dismissed and there are no more common law causes of
action in this case, these negligence claims must also fail.

Accordingly, Defendants shall be granted summary judgment

on Plaintiff's negligence hiring, training, supervision, and retention claims.


F. Negligent Entrustment

Maryland adopts the Second Restatement of Torts, which states that:

> One who supplies directly or through a third
> person a chattel for the use of another whom
> the supplier knows or has reason to know to
> be likely because of his youth,
> inexperience, or otherwise, to use it in a
> manner involving unreasonable risk of
> physical harm to himself and others whom the
> supplier should expect to share in or be
> endangered by its use, is subject to
> liability for physical harm resulting to
> them.

Restatement (Second) of Torts § 390 (1965), Broadwater v. Dorsey, 344 Md. 548, 554 (1997).  The most common example of negligent entrustment occurs "when the owner of an automobile loans a car to a third person who the owner knows, or should know, was likely to use the car in a manner involving an unreasonable risk of physical harm to others," and that third person causes an accident and injures another.  Warr v. JMGM Grp., LLC, 433 Md. 170, 224–25 (2013).

Plaintiff alleges that Defendant HABC was negligent for entrusting supervisors like Johnson with keys to the Plaintiff's office, when they "knew or should have known" that Johnson could

not be trusted with such access or authority.  AC ¶¶ 94-95.  The alleged injury was the ability to access and approach Plaintiff to "make lewd comments in her ear and proposition her in her place of employment."  Id. at 97.

Even assuming that a key could be a "chattel," the tort of negligent entrustment exists to address physical harm.  See Restatement (Second) of Torts § 390; Broadwater, 344 Md. at 554, Warr, 433 Md. at 224-25.  Here, the only alleged harm occurred when Johnson approached Plaintiff, made lewd comments, and propositioned her.  Plaintiff has not alleged physical harm from the HABC's entrustment of keys to Johnson.

Accordingly, Defendants' shall be granted summary judgment on Plaintiff's negligent entrustment claims.


### G. Punitive Damages

Plaintiff has asked for punitive damages, but Defendants argue that they have not acted with ill motive or intent or with reckless or callous indifference to Young's federally protected rights and that local governments in Maryland cannot be liable for punitive damages.

To recover punitive damages, the plaintiff must show that "respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless

35

indifference to the federally protected rights of an aggrieved individual." Harris v. L & L Wings, Inc., 132 F.3d 978, 982 (4th Cir. 1997) (emphasis in original).

The Court finds that there are genuine issues of material fact that prevent summary judgment on Young's punitive damages claims against Defendant Johnson. HABC is correct in asserting that it cannot be held liable for punitive damages so that summary judgment shall be granted on Young's punitive damage claims against HABC. See Md. Code Ann., Cts. & Jud. Proc. § 5-303 ("A local government may not be liable for punitive damages."); 42 U.S.C.A. § 1981a ("A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) . . . .") (emphasis added). However, the punitive damages claims remain pending against Johnson.


IV.  AFFIDAVIT FOR DISCOVERY

Young has filed an affidavit stating that she has taken every step available to determine "the exact nature of the employment relationship between Defendant Johnson and Plaintiff" and "Defendant Johnson's disciplinary history with previous employers." Aff. Stating Pl.'s Need for Discovery ¶¶ 4-5, ECF No. 21-4. She now seeks discovery on these matters.

These matters are at least relevant to claims that remain pending, and Plaintiff shall be able to obtain the requested discovery in the course of pretrial proceedings. However, the discovery is not necessary to the resolution of the pending motion. Accordingly, the Court shall grant Young's request for discovery to be conducted as part of factual discovery in the case.


V.   <u>CONCLUSION</u>

For the foregoing reasons:

1. Defendant Housing Authority of Baltimore City's Renewed Motion to Dismiss Complaint As Amended or In the Alternative for Summary Judgment [ECF No. 20] is GRANTED IN PART AND DENIED IN PART.

2. Defendant Wade Johnson's Motion to Dismiss for Failure to State a Claim and/or for Summary Judgment [ECF No. 23] is GRANTED IN PART AND DENIED IN PART.

3. All of Plaintiff's claims under Counts II and V (<u>quid pro quo</u>), Counts III and VI (due process), Count X (assault), Count VIII (negligent hiring, training, retention, and supervision), and Count IX (negligent entrustment) are dismissed.

4. Plaintiff's Title VII claim in Count I remains pending against Defendant HABC only.

5. Plaintiff's hostile work environment claim in Count V is dismissed without prejudice to the right of Plaintiff to seek reinstatement of the claim as to Defendant HABC pursuant to Md. Code Ann., Cts. & Jud. Proc. § 5-304(d).

6. Plaintiff's equal protection claim in Count IV remains

pending against both Defendants.

7. Plaintiff's equal protection claim in Count VII remains pending against Defendant Johnson only. This claim against Defendant HABC is dismissed without prejudice to the right of Plaintiff to seek reinstatement of the claim as to Defendant HABC pursuant to Md. Code Ann., Cts. & Jud. Proc. § 5-304(d).

8. Defendant HABC'S affirmative defense remains available.

9. Plaintiff's Request for Discovery [ECF No. 21-4] is GRANTED and the discovery may be taken as part of her normal discovery rights.

10. Plaintiff shall arrange a conference to be held by November 29, 2017 regarding further proceedings in the case.


SO ORDERED, this <u>Monday, November 13, 2017</u>.


<u>/s/</u><br>
Marvin J. Garbis<br>
United States District Judge